## COLLISION BETWEEN ELECTRIC CAR AND VEHICLE ON HIGHWAY.

Circuit Court of Lorain County.

CLEVELAND & ELYRIA ELECTRIC RAILWAY CO. v. HUNTER. *

Decided, October, 1898.

*Evidence—Statements of Passengers with Reference to Speed—And as to Whether the Speed was Slackened Just Before the Accident— Incompetent Testimony may not be Prejudicial—Rights of High Speed Cars and Vehicles in the Highway—An Irrelevent Charge Improper—Errors in Charge Cured by Subsequent Charges—Exceptions to Special Charges—Affidavits as to Misconduct of Jury— Bill of Exceptions.*

1. Statements of witnesses as to the time within which electric cars have been stopped, though at other times and other parts of the line, are statements of fact and are competent as evidence bearing on the question, in an action for personal injuries resulting from a collision between an electric car and a horse and buggy, as to the time in which the car could have been stopped at the time of the accident.

2. It does not require an expert to determine, when riding in a car, whether the speed has been slackened; and the testimony of passengers upon an electric car that just prior to an accident the car was running at its usual speed, and that there was no slackening of speed until the collision occurred, was competent.

3. Where it appears, in such a case, that at the time the motorman noticed the peril of the plaintiff, he had ample time to stop the car, the testimony referred to in the preceding paragraphs, whether competent or incompetent, was not prejudicial to defendant.

4. An instruction that: "The object to be accomplished by the defendant, in the construction and operation of its road on that highway, was to furnish rapid transit for the people living along the highway, and for the general public by means of cars rapidly propelled by electricity; such use of the highway is necessarily dangerous to persons traveling thereon in vehicles drawn by horses, and as such a use of the highway is held to be reasonable and lawful, people traveling thereon in vehicles drawn by horses must exercise care commensurate with such increased, but reasonable and lawful dangers. The right of the defendant to run its car and of the plaintiff to ride in the wagon on that highway were equal.

* Affirmed without report, 60 O. S., 634.

Each assumed the dangers of the other's reasonable use of the highway, and was bound to use ordinary and reasonable care to avoid injuring the other and being injured by the other," while entirely proper in defining the rights of the parties in the highway, as a whole, was improper.

5. To have instructed the jury that a street railway company is not responsible for injuries caused by the fright of a horse arising from the ordinary use of its car, where there was no evidence tending to show that there was anything in the appearance of the car which would tend to frighten a horse of ordinary gentleness, and the instruction could have no application to the issues made by the pleadings, would have been improper.

6. An instruction that "there is no evidence tending to show that defendant was guilty of negligence in any of the respects charged in plaintiff's petition in running its car at the time and place and under the circumstances of this case, prior to the time that the motorman discovered or by the use of ordinary care might have discovered the fright of the horse," where the negligence was subsequent thereto, is within the rule stated in the preceding paragraph.

7. Where evidence, in the form of affidavits in support of an allegation of misconduct of the jury, is controverted by evidence, also in the form of affidavits, and it does not appear from the record that the bill of exceptions contains all of the evidence on that question, a reviewing court can not say that the trial court erred in granting a new trial for that reason.

8. A judgment will not be reversed because a charge to the jury too prominently set forth certain facts favorable to the plaintiff and omitted those favorable to the defendant, where such omission was offset by special requests given on behalf of the defendant.

9. Unless exception was taken and is noted upon the record, the circuit court can not say that the giving of a particular special request was erroneous.

HALE, J.; CALDWELL, J., and MARVIN, J., concur.

Prior to July, 1896, the plaintiff in error had constructed a street railroad between the city of Cleveland and the city of Elyria, passing through the township of Ridgeville, and that time and ever since has been operating upon that road cars propelled by electric motors.

On July 19, 1896, the defendant in error was on her way from Elyria to Ridgeville, traveling in the highway, in a wagon drawn by one horse driven by her brother, in the center of which highway was located the track of the railway company. In the

eastern limits of the city of Elyria there was a collision be-
tween the wagon in which the plaintiff was traveling and the
car passing westward on the railroad track.   In this collision
the wagon was demolished, overturned, the defendant in error
thrown out and sustained very serious injuries.   She prosecuted
in the court of common pleas her action to recover of the plaint-
iff in error compensation for the injuries thus sustained, claim-
ing that her injuries were caused by the carelessness and negli-
gence of the railway company, through its agents in running
and managing the car that collided with the wagon.   A more
definite reference to the specific allegations of negligence will
be referred to as we consider the requests that were made by
defendants of the court to charge the jury.

The action was tried in the court below, resulting in a ver-
dict for the defendant in error in the sum of ten thousand
dollars.   A motion for a new trial was overruled and a judg-
ment rendered on that verdict.

The entire proceedings had in the court below are brought
before this court for review by a bill of exceptions, covering
something more than five hundred pages.   Various errors are
assigned to the rulings made by the court on the admission and
exclusion of the evidence.   It is only necessary to refer to a few
of those rulings.

First.   The defendant in error was permitted to give to the
jury the statement of witnesses as to the time in which cars had
been stopped upon this railroad at other times and at a differ-
ent place from the place of this collision, for the purpose of
showing within what time the car could have been stopped at
this time.

One of the material allegations of negligence was, that the
motorman was negligent and careless in omitting to check the
speed of the train after he had observed or by reasonable care
could have known the peril in which the defendant in error
was placed.   It became, therefore, material to determine within
what time the car could be stopped.   This testimony we do
not regard as calling for an opinion of witnesses which they
could not express as to the time within which the car could be
stopped.   It was the statement of a fact as to the time within

which cars had actually been stopped. The majority of the court are very clearly of the opinion that such testimony was competent. For myself I see some objection to the testimony.

In order to have it a proper measure to apply to the case, it necessarily involved various items—the weight of the car, condition of the motor, the grade of the track, the condition of the track—that would raise independent issues in the case. But, as I say, we hold the testimony to be competent.

The testimony in the case, both on the part of the plaintiff and defendant, agree upon the proposition that a car could be stopped within 100 to 125 feet, running at the speed at which this car was running. It could have been stopped within a distance not to exceed 125 feet.

The jury, in a special finding, found at the time the horse started to cross the track the car was 160 feet away from the point of collision.

The finding of the jury, therefore, shows that at the time the motorman should have noticed the peril of this defendant in error he had ample time to stop the car, and therefore that this testimony, whether competent or incompetent, was without any prejudice to the plaintiff in error, which affected the verdict.

A number of witnesses, some of whom were upon the car and others who observed the car were permitted to testify as to the speed that this car was running just before the accident. All of those witnesses, except two, testified only to the fact that just prior to the accident the car was running at its usual speed and that there was no slacking of the speed until the collision occurred. That testimony certainly was unobjectionable. It does not take an expert to determine, when riding in a car, whether the speed has been slackened or otherwise.

Two witnesses, Kuehne and Nicholls, were permitted to give opinions as to the speed this car was running.

Nicholls testified in his opinion it was moving from sixteen to eighteen miles per hour. Kuehne thought it was running at the rate of twenty miles per hour.

These witnesses failed to show much knowledge on the subject, entitling them to speak as experts and to give opinions.

The defendant's motorman testified that this car was running

from fifteen to sixteen miles per hour. Nicholls testified it was running from sixteen to eighteen. We do not think that the difference between the two statements is sufficient to reverse the judgment. And as to both of those witnesses we are inclined to say that they showed such knowledge and such experience as to make the testimony barely competent, but that its weight was of little value.

The testimony given by the physicians in answer to the hypothetical questions is also challenged and exceptions were taken. We see no objection to that testimony.

Wasson and Christy were examined on the part of the plaintiff in error as expert witnesses. Certain questions were put to each of them which the court did not permit to be answered. In that we think there was no error. Both of those witnesses gave to the jury all the information that was needed concerning the time in which a car could be stopped, the methods of stopping a car, the manner of applying the brakes, and educated the jury to the full extent that was necessary and competent.

So far as the rulings upon the questions of evidence, we are of the opinion that there was no error committed by the trial court.

At the close of the testimony the case was argued, and it is claimed that there was misconduct on the part of the counsel for the defendant in error. Perhaps the argument of counsel extended to the full extent that should be authorized, but on interruption by counsel for the plaintiff in error the offending counsel very gracefully came down, and we do not see that any substantial injury was done to the case of the railway company by the remarks they are complaining of.

At the close of the testimony the court was asked by the defendant in error to instruct the jury in two special requests, which were given, the second of which the plaintiff in error complains should not have been given. I find no exception noted upon the record by plaintiff in error to the giving of this request, therefore we can not cay that it was error, but independent of that we think the request was one that the court might well have given.

Complaint is made that it made too prominent certain facts

favorable to the defendant in error and omitted those favorable to the plaintiff in error. But that was fairly off-set by the request that they made on the other side.

The plaintiff in error then requested the court in a large number of requests to charge the jury, four of which were given. These requests called the attention of the court to specific claims made by the plaintiff in error. The fifth request was refused and exception taken; it was in these words:

"The object to be accomplished by the defendant in the construction and operation of its road on that highway was to furnish rapid transit for the people living along the highway and for the general public by means of cars rapidly propelled by electricity; such use of the highway is necessarily dangerous to persons traveling thereon in vehicles drawn by horses, and as such a use of the highway is held to be reasonable and lawful, people traveling thereon in vehicles drawn by horses must exercise care commensurate with such increased, but reasonable and lawful dangers. The right of the defendant to run its car and of the plaintiff to ride in the wagon on that highway were equal. Each assumed the dangers of the other's reasonable use of the highway, and was bound to use ordinary and reasonable care to avoid injuring the other and being injured by the other."

That part of the charge defining the rights of the parties in the highway was entirely proper and would have been entirely proper for the court to have given in the charge to the jury so that they would have understood the rights of each in the highway; but the request as a whole we think the court was justified in refusing.

There are a number of requests which I will consider together. "The defendant was not responsible for any injury to the plaintiff caused by the fright of the horse arising from the ordinary use and operation of its car." There is no evidence tending to show that there was anything in the appearance of the car in question that would have a tendency to frighten a horse of ordinary gentleness. Another: "There is no evidence tending to show that defendant was guilty of negligence in any of the respects charged in plaintiff's petition in running its car at the time and place and under the circumstances of this case prior to the times that the motorman discovered, or by the use of

ordinary care could have discovered, the fright of the horse.''
Again: ''The fright of the horse can not be considered by the
jury except as bearing upon the conduct of the motorman after
he discovered, or by the use of ordinary care ought to have
discovered, such fright.''

Those were all refused and exceptions taken separately to
each.

The request to charge the jury as to the responsibility of the
company for causing the fright of the horse by the appearance
of the car, or the speed with which the car was run, was all
properly refused, because it had no application whatever to the
issues made by the pleadings and to be tried by the court and
jury.

The petition alleges, after stating the general facts—''That
the horse attached to said wagon in which the plaintiff was riding
was being driven by a brother of the plaintiff and became fright-
ened and unmanagable by and at the approach of said car of
the defendant while some distance therefrom, and at a point
on said highway where said street railroad tracks run along the
center of said street; that said horse gave evidence of being
frightened at a distance of at least two hundred feet or more
from said car as it was approaching, by rearing up on its hind
legs, and sprang one way and another, and it then and there
sprang on and over said track of said defendant; that said rear-
ing of said horse and its great fright and its crossing said track
were all in full view of the servants and agents of the defendant
running and operating said car, and at such distance therefrom
when the same occurred as to afford abundant time to check the
speed and stop the motion of the car before it came in contact
with the plaintiff and the wagon in which she was riding as
heretofore stated.''

It is not charged that the character of this car or its speed
caused the fright of the horse. The simple statement is, that
the horse was frightened; not that there was any carelessness or
negligence on the part of the company in frightening the horse.

The petition then proceeds:

''She further says that while she was passing along said high-
way at the point aforesaid, and as said horse and wagon were

crossing said track as above stated, the defendant, through its agents conducting and operating said car, being in full view of the plaintiff's dangerous position, carelessly and negligently omitted to stop or reduce the speed of said car, and carelessly and negligently omitted to apply the brake to stop or slacken the speed of the same, although they had ample time so to do, after the said servants and agents of the defendant so operating said car discovered, or by the exercise of due diligence and care could and ought to have discovered, the imminent danger and threatened injury to the plaintiff by omitting so to do.''

The complaint in the petition is, that the horse having become frightened, the motorman failed to exercise due care in slacking his car to prevent, as he could, the collision. The requests made relating to the responsibility of the company for causing the fright of the horse was outside of the issues made in the pleadings and for that reason undoubtedly were refused by the trial court.

The charge of the court fairly covers every legal proposition involved in the case. In addition thereto the requests that I have named were given, two in behalf of the plaintiff and four in behalf of the defendant. The jury could not have failed to understand the law of the case.

But it is said that the verdict is against the weight of the evidence, and that a new trial should have been granted because of that fact.

It can not be doubted that if the witnesses that were examined on the part of the defendant in error are to be believed, the evidence was sufficient to establish every material fact essential to a recovery by the defendant in error.

It is true there was a very sharp conflict of testimony produced by the opposing parties. The motorman testifies that he shut off the current fully three hundred feet away from the point of collision; that he had approached within thirty feet of the point of collision before the horse started across the track. Of course if the real fact is as testified by the motorman there was no liability on the part of the company; but the jury, under the circumstances of the case, perhaps influenced somewhat by the fact that the buggy was carried some fifty feet after the collision,

before the car was stopped, the force of the collision and other circumstances, accepted the testimony of the plaintiff.

Now we would not hesitate to interfere with a verdict of the jury if not fairly supported by some testimony which it was the province of the jury to pass upon and which they might or might not believe. We think the testimony in this case was of such a nature that we would not be authorized to disturb the verdict of the jury. If there was any wrong done this plaintiff in error it was because of the finding of the jury upon the fact of the case which was their province to pass upon.

At the close of the plaintiff's testimony a motion was made and the court was asked to direct a veerdict for the defendant, which the court refused. There was some testimony at that time tending to establish the essential facts necessary for recovery, and the court properly refused to grant that motion.

It is said that the damages were excessive and that therefore a new trial should have been granted upon that ground. That depends upon a fact that was in dispute at the trial, to-wit: the defendant in error, a considerable time after this collision and after her injuries were supposed to be fairly cured, fell, and it is said that she then by that fall received the injury from which she is now suffering, and that she is not now suffering from the result of the injury she received at the collision.

If the condition of this defendant in error to-day, and as it appeared upon the trial, as shown by this record, was caused by this collision and the company was responsible to the full extent for that injury. then these damages were not excessive.

It is said that there was some misconduct of the jury. The allegation of misconduct of the jury was supported by affidavits, controverted by other affidavits; and there was no statement in the record that the bill of exceptions contains all the evidence that was produced and offered upon that motion; hence we can not say the court erred in refusing to grant a new trial for that reason.

Again: It is said that the special questions submitted to the jury were not answered and there was error in the court receiving the questions as answered. We do not think that that

is well taken. The jury did answer the questions. One they did not very definitely answer; it related to the question of time, and they said we are unable to say the exact time, but a very short time. We have given this case as careful a review as we are able to make, and the conclusion is that there is no error apparent upon this record, and the judgment of the court below is affirmed.

*Wilcox, Collister & Parmelee* and *E. G. Johnson*, for plaintiff in error.

*W. W. Boynton* and *P. H. Boynton*, for defendant in error.